**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/2021

BOSHRA FARID YOUSSEF BERSOUM;                    :
WAHEED MANKORIOS MICHAEL                         :
MANKORIOS; HANI GABER RAMZI MAHANI;              :
MELAD GABER RAMZI MAHANI; NASHAAT               :
BERSOUM YOUSSEF BERSOUM; GERGES                 :
SEDIK FAHMI MEGALI; ABANOB MAKRAM               :
ASKANDER BOTROS; MELAD SHAUKI                    :     No. 20-cv-08013 (CM)
RASHED HANA; LOUKA YOUNAN LABIB                  :
TOBIA; MAKARIOS HAMDI MATA GERGES;              :
MENA MEDHAT KHAMIS MATA; MATA                    :
YOUNAN MATA GERGES; EMAD AYAD                    :
KAMEL GERGES; MELAD GHALY ATIA                   :
GHALY; EMIL SAMIR BASIT HENIN; ESAAK            :
SAMIR FEREZ GAMEL; SHERIF TOUAB                  :
NABIL AZIZ; HANI ANDRAOUS NASIF                  :
HANA; SOBHY HAMDI FATHY GERGES;                  :
REDA ESAAK MATA GERGES; YOUSSEF                 :
GERGES NAEEM SORIAL; ANDRAOUS                    :
FAYES DANIEL SHEHATA; YOUNAN                     :
GERGES FEKRI YOUNAN; ASHRAF SALAH               :
LABIB BAHR; AMGAD MAKAR ZAKI                     :
KAMEL; ATEF NADI HABIB KAMEL;                    :
NOSEHY GABAIIAH ZEKRY KAMEL; SAMI               :
RAMZI NASHED HENIN; TOUAB NABIL                  :
AZIZ HENIN; BOTROS MAKRAM ABDOU                  :
ESTEMALEK; GEORGE MAHROUS ADLY                   :
MEGALI; HANI ROMANI ZEKERY MAGALI;              :
BOULUS SALAH SHAFIK KARAS; REDA                  :
SABET GALI AMBAREK; NADER WAHEEB                :
HANA KHALIL; ALAA SAID ABEDALLATIF              :
HUSAIN; AHMED AL SAID AL SAID IBRAHIM;          :
KAMAL MOHAMED AL SAID YOUSSEF;                   :
HESHAM MOHAMED MAHMOUD AL SAID;                  :
IBRAHIM SHAOUKI IBRAHIM YOUSSEF;                :
ADEL AWADAIIAH ESKANDER IBRAHIM;                :
GAMEL IBRAHIM AWAD ASAAD; YOUSSEF               :
SAAD ESKANDER HANA; GERGES RATEB                :
YOUSSEF IBRAHIM; MOSAAD ALI AHMED               :
FARAG; IBRAHIM ESKANDER NAZZEM                   :
KARAM; AHMED SHAABAN HUSAIN GANAB;              :
HANI SAID ABEDELLATIF HENDI; KARAM              :
SAMAAN IBRAHIM AWAD; ALAA GOMAA                 :

ABDELLATIF AL SAID; ADEL MOSTAFA                    :
AHMED AMEEN; MOHAMED FOUDA AL                       :
SAID ATALLAH; SHAABAN RAMADAN                       :
MOHAMED AMAR; WAAL MOHAMED                          :
MAHMOUD AL SAID; SAID ABDELAZEEM                    :
ABDELLATIF HENDI; ABDELSALAM                        :
MOHAMED MAHMOUD ALSAID; EMAD                        :
MOHAMED ABDALLAH ARAFA; GABER                       :
AHMED MOHAMED YOUSSEF; MAHMOUD                      :
RAMADAN ESMAEEL AL SAID; ISLAM SOBHI                :
MOKHTAR IBRAHIM; ALAA MASOUD ALI                    :
MOUSA; RAMADAN GOMAA ADELLATIF AL                   :
SAID; FATHI MOHAMED YOUSSEF SELIM;                  :
ESMAEEL MOHAMED IBRAHIM MOUSA;                      :
MASOUD ATIA MOKHTAR IBRAHIM;                        :
MAHMOUD KAMEL MOHAMED NASAR;                        :
MOHAMED TANTAWI SAID ALI; MOHAMED                   :
DAHY ABDELHAMID AHMED; WALEED M.                    :
ABDELMEGID; AHMED MOHAMMEAD                         :
MAHMOUD; SHALABY ABDELLATIF                         :
HOSSEIN; MOHAMMAD SOBHY MOKHTAR;                    :
SALAH HUSSEIN IBRAHIM; ABDLRAHMAN                   :
MOHAMMED AFIFI; ELSAID MOHAMMAD                     :
ABOU ALKHEIR; MOATAZ AHMED                          :
ALSERAG; SAME ATTIA IBRAHIM;                        :
MOHAMMAD ABDELSAMEA NASSIF;                         :
IBRAHIM SOLIMAN HAROUN; MOHAMMAD                    :
ELSAID IBRAHIM; SOBHY MOHAMMAD                      :
GANAB; MOATEZ AHMED FATHY; KHALED                   :
ATTIA SALEH; MOHAMMAD ABDALLAH                      :
HAROUN; ABDALLAH ASEM SOLIMAN;                      :
AHMED MOHAMMAD ABDELBASET;                          :
YASSER ABDELEALEEM MOHAMMAD;                        :
MAHMOUD FARID ALGAZAR; AMER                         :
ISAMEIL BAKR; YEHIA SAID MOHAMMAD;                  :
AHMED ASHRAF ALI; YASSIN MOHAMMAD                   :
NASSEF; MOSTAFA ELSAID ALHOSSANY;                   :
AID MOKHTAR IBRAHIM; MOHAMMAD ALI                   :
SHARABIA; KHALED ALSAID IBRAHIM;                    :
SALAH HASAN MOHAMED IBRAHIM;                        :
IBRAHIM FARAG AKILA MOFTAH; NAGY                    :
IHAB HASSAN MOHAMED; GOMAA EBAID                    :
MOHAMED ZEDAN; SAMY SAAD MOHAMED                    :
AFIFY; ESSAM ADEL MOHAMED HASSAN;                   :
AHMED GOMMA ATAIA ABOUARAB;                         :
HAMDY GOMMA ATAIA ABOUARAB;                         :

MOHAMED MOURSY ABOUARAB; ALI                           :
SHABAN HOSAIN GANNABL MOHAMED                          :
MOHAMED HOSAIN GANNAB; AHMED                           :
MOHAMED DIAA ELDAIN AYOUB; OSAMA                       :
MOHAMED DIAA ELDAIN AYOUB;                             :
MOHAMED REDA BEDIR; MOHAMED FATHI                      :
MOHAMED ELSAYED; TAMER HOSAIN                          :
ELSAYED HOSAIN; MOHAMED GABER                          :
AHMED YOUSEF; ISALM MOHAMED                            :
MAHMOUD; HELMI NAZIM ABDELHALIM                        :
KARAM; REDA SAAD MOHAMEDL                              :
MOHAMED AHMED HOSAIN; MOHAMED                          :
EBRAHIM SAAD; WALEAD AHMED HASSAN;                     :
MOUSTAFA AHMED ELKILANY; KHALED                        :
MOUSTAFA FOUDA; AHMED SALLAH                           :
ATTALLAH; HESHAM KHALED ELSAYED;                       :
GOUDA MOHAMED ABOU ELAMAYEM;                           :
AHMED ABDELGHANY MOHAMED;                              :
HASSAN ADEL ABDEL WAHAB MERSAL;                        :
HAYTHAM KAMEL MOUSTAFA; and                            :
ABDELRAHMAN ELSAYED NASR HASSAN                        :
                                                       :
                    Plaintiffs,                        :
                                                       :
      -against-                                        :
                                                       :
                                                       :
MUSTAFA T.A. ABOTEAT FOURTH                            :
DEPUTY PRIME MINISTER AND HEAD OF                      :
AUTHORITIES (DEFENSE, INTERIOR);                       :
COLONEL AHMED ABOUZEID AL MISMARI,                     :
CHIEF OF STAFF – LIBYAN NATIONAL ARMY;                 :
AL-MAHDI HASSAN MUFTAH ALLABAD,                        :
FIRST DEPUTY PRIME MINISTER AND HEAD                   :
OF SECURITY AFFAIRS; FAYEZ AL-SARRAJ,                  :
PRIME MINISTER OF THE GOVERNMENT                       :
OF NATIONAL ACCORD OF LIBYA; and                       :
IBRAHIM OMAR DABBASHI, AMBASSADOR                      :
OF LIBYA TO THE UNITED NATIONS,                        :
                                                       :
                    Defendants                         :

**DECISION AND ORDER DISMISSING PLAINTIFFS' COMPLAINT SUA SPONTE**

McMahon, J.:

Plaintiffs, one hundred twenty-eight Egyptian citizens, bring this action for compensatory and punitive damages against Defendants, five Libyan officials. Plaintiffs allege that Defendants are jointly and severally responsible for the torture, extrajudicial detention and unlawful deportation of Plaintiffs in and from the sovereign State of Libya. The Complaint alleges that Defendants committed human rights violations under the Torture Victim Protection Act of 1991 (Pub. L. 102-256, H.R. 2092, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350, note)) ("TVPA"); the Alien Tort Claims Act (28 U.S.C. § 1350) ("Alien Tort Statute" or "ATS"); and customary international law of human rights and the Law of Nations.

The court demanded that the Plaintiffs make some preliminary showing that it could exercise personal jurisdiction over each of the five named defendants. Plaintiffs contend that personal jurisdiction exists over Defendant Ibrahim Omar Dabbashi ("Dabbashi") because Dabbashi lives in New York, and has for many years, and because his tortious acts and omissions (principally the latter) were committed in New York. Plaintiffs also assert that they have validly served process on Dabbashi.

Plaintiffs make no showing whatever that any of the other four defendants -- Mustafa T.A. Aboteat, Colonel Ahmed Abouzeid Al Mismari, Al-Mahdi Hassan Muftah Allabad and Fayez Al-Sarraj -- is subject to the *in personam* jurisdiction of this court. However, they argue that the court should order jurisdictional discovery before taking any steps to dismiss the pleading.

No defendant has appeared in this action.

For the reasons set out below, Plaintiffs' Complaint is DISMISSED *sua sponte* because none of the defendants is amenable to suit in New York – Dabbashi, ironically, the least of all, since he is cloaked with diplomatic immunity.

## BACKGROUND

*A.  The Parties*

Plaintiffs are one hundred twenty-eight citizens of Egypt. (Compl. ¶ 5). Plaintiffs were legally residing and/or employed in Libya prior to the alleged human rights violations on the basis of which they seek damages. (*Id.*). Each plaintiff earned a livelihood in Libya at the relevant time. (Compl. ¶ 6).

Defendant Mustafa T.A. Aboteat ("Aboteat") is a citizen of Libya currently residing in Al Bayda, Libya.  (Compl. ¶ 7). At all relevant times between January 2013 and July 2013, Defendant Aboteat served as Fourth Deputy Prime Minister and Head of Authorities (Defense, Interior). (*Id.*).

Defendant Colonel A. Mohamed Al-Mismari ("Al-Mismari") is a citizen of Libya currently residing in Al Bayda, Libya.  (Compl. ¶ 8). At all relevant times between January 2013 and July 2013, Defendant Al-Mismari served as Chief of Staff of the Libyan National Army and was responsible for internal security matters. (*Id.*).

Defendant Al-Mahdi Hassan Muftah Allabad ("Allabad") is a citizen of Libya currently residing in Al Bayda, Libya. (Compl. ¶ 9). At all relevant times between January 2013 and July 2013, Defendant Allabad served as First Deputy Prime Minister and Head of Security Affairs (*Id.*).

Defendant Fayez Al-Sarraj ("Al-Sarraj") is a citizen of Libya currently residing in Tripoli, Libya. (Compl. ¶ 10). At all relevant times between January 2013 and July 2013, Defendant Al-Sarraj served as Prime Minister of the Government of National Accord of Libya (*Id.*).

Defendant Ibrahim Omar Dabbashi is a citizen of Libya, currently residing in New York, New York.  (Compl. ¶ 11). At all relevant times between January 2013 and July 2013, Defendant Dabbashi served as Ambassador of Libya to the United Nations. (*Id.*).

All allegations concerning the domicile of these five defendants are asserted "on information and belief."

B.   *The Allegations*

Plaintiffs allege that Defendants "planned, ordered, authorized, encouraged, or permitted subordinates in the Libyan military and paramilitary forces to commit acts of torture, extrajudicial detention, and unlawful deportation, and exercised command, responsibility over, conspired with, and aided and abetted such forces in their commission of, and in covering up, these abuses." (Compl. ¶ 13).

Ansar al-Sharia, a Libyan paramilitary group, was involved in the alleged torture and abuse against Plaintiffs. (Compl. ¶ 14). At all relevant times, Defendants maintained control over Ansar al-Sharia and the Libyan Defense Ministry, which has provided the paramilitary group with funds, arms, and, on occasion, ratification through semi-official authority to conduct its activities. (*Id.*).

Between January 2013 and July 2013, Defendants and other Libyan government officials arrested and imprisoned, tortured, and deported Plaintiffs to Egypt. (Compl. ¶ 20). None of the Plaintiffs had been charged or convicted of a crime. (*Id.*). During interrogations and afterwards, Plaintiffs were neither made aware of their human rights nor given an opportunity to obtain legal counsel. (Compl. ¶ 23).

During their imprisonment, Plaintiffs were placed in solitary confinement for periods ranging from five to fourteen days, without probable cause or court order. (Compl. ¶ 22). Plaintiffs were deprived of any contact with their families and beaten for invoking their right to speak with an attorney. (Compl. ¶ 24).

Defendants physically assaulted Plaintiffs with closed fists, sticks, and clubs. (Compl. ¶¶ 24, 29). Plaintiffs were flogged and forced to strip naked in cold temperatures. (Compl. ¶ 29).

Several Plaintiffs were dismembered, including amputation of one plaintiff's thumb and a gunshot to one plaintiff's knee at the direction of Defendants. (Compl. ¶ 30).

Defendants denied Plaintiffs prescription medications meant to treat life-threatening medical conditions from which they suffered. (Compl. ¶ 25). Some Plaintiffs were denied food for two consecutive days. (Compl. ¶ 26). All were fed no more than twice per day with meals "unsuitable for human beings." (*Id.*). Drinking water was withheld from Plaintiffs. (*Id.*).

Plaintiffs were threatened with rape, electrocution, and castration. (Compl. ¶ 27). Plaintiffs' families were also threatened and one plaintiff's wife was arrested, sexually assaulted, threatened with rape, and deported from Libya. (Compl. ¶ 28). As a result of the torture, Plaintiffs suffered, and continue to suffer from, permanent psychological and mental illness. (Compl. ¶ 27).

After the six-to-seven-month period in which Plaintiffs were detained and tortured, Ansar al-Sharia handed Plaintiffs over to Libyan immigration authorities to be deported to Egypt. (Compl. ¶ 40).

To summarize: nothing that happened to Plaintiffs back in 2013 occurred in the Southern District of New York. All of these terrible things happened in Libya, allegedly at the behest of Defendants, who, through their positions in the Libyan government, "had legal authority and practical ability to exert control over subordinates such as Ansar al-Sharia." (Compl. ¶¶ 31–35). Plaintiffs assert (in entirely conclusory fashion) that Defendants – including Ambassador Dabbashi, who was in the United States at all relevant times (Plaintiff's Memorandum of Law Addressing Personal Jurisdiction ("P.J. Memo."), Dkt. No. 45 at 11) -- were empowered to give orders to, set policy for, and manage the affairs of Ansar al-Sharia, as well as appoint, remove, and discipline its personnel. (Compl. ¶ 36). They assert that Defendants knew or should have known that Ansar al-Sharia was involved in the abductions and torture of Plaintiffs. (*Id.*). And they

contend that Defendants failed and refused to investigate or prevent these human rights abuses, or to punish responsible personnel. (Compl. ¶ 39).  Defendants allegedly continued to stand behind the group until a resolution was issued in September 2013 to dissolve and disarm Ansar al-Sharia, which allegedly caused Defendants to cease their official support for the group. (*Id.*).

In sum, plaintiffs allege that Defendants aided and abetted the paramilitary group in the commission, and covering up, of these violations. (Compl. ¶ 40).

Plaintiffs allege that they are unable to pursue legal remedies in Libya because they have been deported to Egypt and because of the inadequacy of available remedies in Libya, as well as mounting tensions between the two nations, which prevent Plaintiffs from entering Libyan courts. (Compl ¶ 41).

## C. *Procedural History in This Case*

This case was originally filed on August 23, 2018, in the Eastern District of Pennsylvania under Docket Number 18 civ. 3588. (Dkt. No. 1). It was assigned to the Hon. Wendy Beetlestone.

Summonses were issued, but on September 20, 2019, the case was dismissed without prejudice for failure to prosecute. (Dkt. No. 21). Three days later, on September 25, 2019, the court vacated that dismissal and gave counsel sixty (60) days to file a Motion for Default Judgment. (Dkt. No. 22). A clerk's office certificate of default subsequently issued. (Dkt. No. 26).

However, no motion for default judgment was ever made. Counsel apparently had second thoughts about their ability to obtain a valid judgment against any of the five named defendants in Pennsylvania, because they harbored doubts about whether personal jurisdiction over any of the defendants existed in Pennsylvania. They believed, however, that they could establish that personal jurisdiction existed over at least defendant Dabbashi in New York City, so they moved to have the

case transferred to this court (Dkt. No. 30, see especially ¶ 15). Judge Beetlestone granted the motion (Dkt. No. 31), and the matter was assigned to me.

This Court examined the complaint and quickly realized that there were serious issues about whether any of these defendants could be sued in this district. I thus *sua sponte* directed Plaintiffs to demonstrate that personal jurisdiction existed over each defendant, individually, before I would take any substantive action in connection with this case.

On August 9, 2021, Plaintiffs filed a document entitled Memorandum of Law Addressing Personal Jurisdiction. (Dkt. No. 45). This opinion is issued in response to that memorandum.

### D.  *Procedural History Not Disclosed to the Court*

It seems there is some history here that Plaintiffs' counsel omitted to explain in their papers. The Court learned about that history because it is referenced in an article in the Brooklyn Law Review, which my law school intern came across in the process of doing research on my ability, or lack thereof, to exercise personal jurisdiction over these Libyan defendants. I am grateful to Michael J. Stephan, author of *Persecution Restitution: Removing the Jurisdictional Roadblocks to Torture Victim Protection Act Claims*, 84 BROOKLYN L. REV. 1355 (2019), for telling me what counsel did not.

A complaint identical to this one -- brought by 68 Egyptians (all of whom are plaintiffs in this action) and alleging claims under the Alien Tort Claims Act (28 U.S.C. § 1350) and the Torture Victim Protection Act of 1991 (28 U.S.C. § 1350, note) arising out of the very same incidents of torture and abuse that are the subject of this lawsuit -- was filed in this Court in 2016 against three Libyan citizens who just happen to be defendants in this lawsuit (Mustafa T.A. Abotaeta, Colonel A. Mohamed Al Mismari, and Al-Mahdi Hassan Muftah Allabad). *Bersoum v. Abotaeta*, 2017 WL

3446819 (S.D.N.Y. Aug. 10, 2017). The case, which was filed by a different lawyer than the lawyers prosecuting the instant action, was assigned to my colleague, the Hon. Lorna Schofield.

No defendants appeared and, as occurred in the Eastern District of Pennsylvania, Plaintiffs' then-counsel obtained a certificate of default against them. However, defendants actually moved before Judge Schofield for entry of a default judgment. That motion was denied, and the case was dismissed, because Judge Schofield concluded that she (1) lacked subject matter jurisdiction over the claims brought pursuant to the Alien Tort Claims Act (also known as the Alien Tort Statute, or ATS), and (2) lacked personal jurisdiction over the three named defendants. *Id.*

Perhaps Plaintiffs' current counsel was unaware of this history. However, it was most certainly not brought to my attention. And it most certainly bears on whether this case should be allowed to proceed.

## DISCUSSION

### I.    All Claims Against Defendants That Are Brought Under the ATS by the Plaintiffs to the Earlier Action Are Dismissed for Want of Subject Matter Jurisdiction

The issue of this Court's subject matter jurisdiction over claims – and in fact, over these exact same claims – brought under the ATS was decided by Judge Schofield in her 2017 opinion. In the earlier iteration of this case assigned to Judge Schofield, she concluded that this Court lacked jurisdiction over the plaintiffs' ATS claims because "the ATS does not provide jurisdiction over claims brought 'for violations of the law of nations occurring outside [of] the United States.'" *Bersoum*, 2017 WL 3446819 at *2–3 (quoting *Chowdhury v. Wordtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 49 (2d Cir. 2014)). As all relevant conduct in this action occurred in Libya, Judge Schofield dismissed the plaintiffs' ATS claims. *Id.* at *3. Thus, I am collaterally estopped from reconsidering this Court's subject matter jurisdiction over these ATS claims as to the 68 plaintiffs who brought that action and as to defendants Aboteat, Al Mismari, and Allabad.

> Issue preclusion [or collateral estoppel] generally refers to the effect of a prior
> judgment in foreclosing successive litigation of an issue of fact or law actually
> litigated and resolved in a valid court determination essential to the prior judgment,
> whether or not the issue arises on the same or a different claim.

*New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001). Such preclusion "applies to jurisdiction

determinations, including those of personal jurisdiction, notwithstanding that a dismissal for lack

of personal jurisdiction does not constitute an adjudication 'on the merits' for claim preclusion

(i.e. res judicata) purposes." *Zapata v. HSBC Holdings PLC*, 414 F.Supp.3d 342, 348 (E.D.N.Y.

Sep. 30, 2019) (quoting *Ins. Co. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S.

694, 702 n.9 (1982)).

As to Dabbashi and Defendant Al-Sarraj, "Defensive use of collateral estoppel precludes a

plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parklane Hosiery*

*Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979) (quoting *Bernhard v. Bank of America Nat. Trust &*

*Savings Assn.*, 19 Cal.2d 807, 813 (1942)). Therefore, I am similarly precluded from reconsidering

this Court's subject matter jurisdiction over those 68 plaintiffs' ATS claims as against Dabbashi

and Al-Sarraj.

The ATS claims asserted by the remaining 60 plaintiffs, however, cannot be dismissed on

former adjudication grounds, as they were not parties to the earlier action. In any case, they must

be dismissed for want of personal jurisdiction over Defendants, as explained below.

## II.    All Claims Against Dabbashi Are Dismissed Because He is Cloaked with Diplomatic Immunity.

Dabbashi was not originally named as a defendant in the lawsuit before Judge Schofield.

He was added as a defendant in this action, however; and Plaintiff caused this case to be removed

to this court, from the Eastern District of Pennsylvania, because plaintiffs (or their counsel)

believed that this court could exercise jurisdiction over him, since he lives in New York – and long has done so – in his capacity as the Libyan Ambassador to the United Nations ("UN").

But Plaintiffs (or their counsel) have overlooked a fact of singular importance.

It matters not a whit that Dabbashi currently resides, and at all relevant times has resided, with his family in New York City; or that publicly available records confirm that he has and continues to be associated with 309 East 48th Street, Apt. 10, New York, New York, since September of 2007 (Dkt. No. 45, Exhibit C); or that he was also associated with New York address 160 East 48th Street, New York, NY between February 2012 and June 2014; or that publicly available information indicates that his wife and sons allegedly reside or have resided at the 309 East 48th Street address; or that his children reportedly attended high school and college in New York State.[1] (P.J. Memo., Dkt. No. 45 at 10). Nor does it matter that Plaintiffs' Complaint specifically alleges that all actions and omissions on his part occurred in New York. (Compl. ¶¶ 35-40). And it does not matter that Plaintiffs purported to serve Dabbashi with process by Plaintiffs on April 18, 2019, when Jeffrey D. Cochran, a Licensed Private Investigator and Retired Special Agent of the U.S. Department of Homeland Security, personally served a true and correct copy of the Summons and Complaint in the present action – in both English and Arabic – at 309 East 48th Street, New York, New York, by leaving it with one Yousef A.S. Farag, who represented that he had the authority to accept service on behalf of Dabbashi. (P.J. Memo., Dkt. No. 45 at 12); *see also* Dkt. No. 45, Exhibit D.

All of this is irrelevant because Dabbashi is the Libyan Ambassador to the United Nations. He enjoys diplomatic immunity; not only can he not be sued on these claims, he need not even bother to appear in this action to contest service or assert his immunity.

---

[1] Plaintiffs have not submitted documentary proof to this effect.

"Diplomatic immunity is a principle of international law by which certain foreign government officials are not subject to the jurisdiction of local courts and other authorities for both their official and, to a large extent, their personal activities." U.S. DEP'T OF STATE, DIPLOMATIC AND CONSULAR IMMUNITY: GUIDANCE FOR LAW ENFORCEMENT AND JUDICIAL AUTHORITIES 2 (2018). The principle idea underlying such immunity "is that foreign representatives can carry out their duties effectively only if they are accorded a certain degree of insulation from the application of standard law enforcement practices of the host country." *Id.* at 4.

The Vienna Convention on Diplomatic Relations, to which the United States is a signatory and which Libya has ratified, "broadly immunizes diplomatic representatives from the civil jurisdiction of the United States courts." *Tachiona v. U.S.*, 386 F.3d 205, 215 (2d Cir. 2004). Under the Convention, a "diplomatic agent" is "the head of the mission or a member of the diplomatic staff of the mission." T.I.A.S. No. 7502, 23 U.S.T. 3227, 1972 WL 122692. Dabbashi, Ambassador of the Libyan Mission of the United Nations, qualifies as a diplomatic agent. *Id*; *see also U.S. v. Khobragade*, 15 F.Supp.3d 383, 385 (S.D.N.Y. Mar. 12, 2014).

Diplomatic agents "may not be arrested, detained, prosecuted or sued unless their immunity is waived by the sending state." *U.S. v. Khobragade*, 15 F.Supp.3d at 385. A diplomatic agent enjoys immunity from the criminal, civil, and administrative jurisdiction of the receiving State, except in four circumstances: (1) "a real action relating to private immovable property situated in the territory of the receiving State, unless he holds it on behalf of the sending State for the purposes of the mission"; *Id.* (2) "an action relating to succession in which the diplomatic agent is involved as executor, administrator, heir or legatee as a private person and not on behalf of the sending State"; *Id.* (3) "an action relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions"; *Id.* and (4) "in respect of any

counter-claim directly connected with the principal claim" of a suit in which he was the initiating party. *Id.* It goes without saying that an action brought under the TVPA does not fall within any of those limited exceptions.

Dabbashi is, therefore, immune from suit. He is free to ignore process and, while diplomatic personnel sometimes enter limited appearances for the purpose of contesting jurisdiction over them, they are not required to do so and their failure to do so does not constitute a default on which judgment can be entered. U.S. DEP'T OF STATE, *supra* at 7.

Per 22 U.S.C. § 254d, "Any action or proceeding brought against an individual who is entitled to immunity with respect to such action or proceeding under the Vienna Convention on Diplomatic Relations . . . *shall be dismissed.*" 22 U.S.C. § 254d (Emphasis added). Plaintiffs cannot sue the ambassador under the TVPA in a United States court. "The person of a diplomatic agent shall be inviolable. He shall not be liable to any form of arrest or detention. The receiving State shall treat him with due respect and shall take all appropriate steps to prevent any attack on his person, freedom or dignity." *See supra*, T.I.A.S. No. 7502, art. 29.

Because of Dabbashi's diplomatic immunity, the Complaint is *sua sponte* dismissed as against him, in its entirety and with prejudice.

**III.   This Action is Dismissed as Against the Other Four Defendants Because the Court Lacks Personal Jurisdiction Over All Defendants**

*A.   The Court Has Subject Matter Jurisdiction Over the TVPA Claims*

The Torture Victim Protection Act confers extraterritorial subject matter jurisdiction over the claims asserted in the complaint. Pub. L. 102-256, H.R. 2092, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350, note). The TVPA "creates an express cause of action for victims of torture and extrajudicial killing in violation of international law." *Jesner v. Arab Bank, PLC*, 138 S.Ct. 1386, 1398 (2018). It does so by imposing liability on any "'*individual* who, under actual or apparent

authority, or color of law, of any foreign nation' subjects another individual to torture or extrajudicial killing." *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177–78 (2d Cir. 2014 (citing 28 U.S.C. § 1350 note § (2)(a)). The Act "does not attempt to deal with torture or killing by purely private groups." H.R. Rep. No. 367, 102d Cong., 2d Sess., at 5 (1991), reprinted in 1992 U.S.C.C.A.N. 84, 87.

The TVPA permits plaintiffs "to pursue their claims of official torture under the jurisdiction conferred by the Alien Tort Act and also under the general federal question jurisdiction of section 1331 . . . " *Kadic v. Karadzic*, 70 F.3d 232, 246 (2d Cir. 1995). "[B]ecause customary international law imposes individual liability for a limited number of international crimes – including war crimes, crimes against humanity (such as genocide), and torture – [the Second Circuit has] held that the [Alien Tort Statute] provides jurisdiction over claims in tort against individuals who are alleged to have committed such crimes." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 120 (2d Cir. 2010), *aff'd*, 569 U.S. 108 (2013). Further, unlike the Alien Tort Statute, under which a presumption against extraterritoriality applies to all claims, the Second Circuit has found that the TVPA is not subject to the territorial constraints on common-law causes of action. *Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 50–51 (2d Cir. 2014). Instead, it has stated that "the legislative history of the TVPA unambiguously supports [the] conclusion" that the TVPA has extraterritorial application. *Id.* at 51.

Therefore, because Plaintiffs allege that Defendants have committed torture, the Alien Tort Statute allows this Court to exercise subject matter jurisdiction over these claims under the TVPA.

However, that only gets Plaintiffs halfway home. As was pointed out in a recent law review article – *Persecution Restitution: Removing the Jurisdictional Roadblocks to Torture Victim Protection Act Claims* by Michael J. Stephan – subject matter jurisdiction is toothless without

personal jurisdiction. And there is not the slightest indication on this record that any of the four remaining defendants has any contacts with the United States that would subject him to jurisdiction in this country and in this court.

### B. Legal Standard for the Exercise of Personal Jurisdiction

It is a well-established principle of American law that a "judgment entered against [a party] not subject to the personal jurisdiction of the rendering court is a nullity." *Covington Industries, Inc. v. Resintex A.G.*, 629 F.2d 730, 732 (2d Cir. 1980); *See also American Institute of Certified Public Accountants v. Affinity Card, Inc.*, 8 F.Supp.2d 372, 375 (S.D.N.Y. 1998). "Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of court was prerequisite to its rendition of a judgment personally binding him." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citing *Pennoyer v. Neff*, 95 U.S. 714, 733 (1877)). More recently, with the advent of personal service of summons and other forms of notice, "presence" was reconceptualized under the Due Process Clause as "minimum contacts." *Id.*

The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *International Shoe Co.*, 326 U.S. 310, 319 (1945)). Therefore, a court must conduct a two-part inquiry to determine whether to exercise personal jurisdiction. "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Id.* (quoting *International Shoe Co.*, 326

U.S. at 320). The inquiry thus requires the Court to determine "whether personal jurisdiction will lie" and then whether the exercise thereof "comports with due process protections established under the United States Constitution." *Licci*, 732 F.3d at 168; *Walden v. Fiore*, 571 U.S. 277, 283 (2014).

### C. The Court Lacks Personal Jurisdiction Over Any of the Four Non-Diplomat Defendants

As to three out of four of these defendants – Mustafa T.A. Aboteat, Colonel A. Mohamed Al Mismari, and Al-Mahdi Hassan Muftah Allabad – Judge Schofield's opinion is entitled to preclusive effect, under the doctrine of collateral estoppel, on the issue of personal jurisdiction. In that opinion, she found that there was neither general nor specific personal jurisdiction over Defendants in New York, nor was there a statutory basis for personal jurisdiction under F.R.C.P. 4(k)(2) "because the exercise of such jurisdiction would be inconsistent with the Constitution's due process requirements." *Bersoum*, 2017 WL 3446819 at \*3–4. The issue of this court's personal jurisdiction in connection with the claims here in suit has already been resolved as against these three individuals -- at least as of the time Judge Schofield issued her opinion, which was on August 10, 2017. *Bersoum*, 2017 WL 3446819.

Plaintiffs have not provided this court with any information tending to show that it has acquired personal jurisdiction over Aboteat, Al Mismari or Allabad in the four years since Judge Schofield issued her decision. Nor have they provided any evidence tending to show that the court has jurisdiction over newly-added defendant Fayez Al-Sarraj.

Rule 4(k)(2) of the Federal Rules of Civil Procedure, "specifically, extends the extraterritorial reach of the United States federal courts over foreign defendants by expanding the scope of personal jurisdiction in federal question cases." Holly A. Ellencrig, *Expanding Personal*

*Jurisdiction Over Foreign Defendants: A Response to Omni Capital International v. Rudolf Wolff & Co.*, 24 CAL. W. INT'L L. REV. 363 (1994). It provides as follows:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws.

F.R.C.P. 4(k)(2).

In this case, the cause of action arises under federal law – specifically the TVPA. Pub. L. 102-256, H.R. 2092, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350, note); 28 U.S.C. § 1350. According to the Plaintiffs, each of these four defendants was sent a request to waive service of a summons in this action, along with a copy of the complaint, two copies of the waiver form, and a prepaid means of returning one signed copy of the form. (Dkt. Nos. 11–14). Each of them returned a signed copy of the waiver of service via ECF – "signed" in the sense that each defendant's name was printed on his respective waiver – with a certification of translation. (*Id.*). Finally, I will assume (although Plaintiffs do not make any such showing) that none of these four individuals is subject to jurisdiction in the courts of general jurisdiction in any of the fifty states.

But that is not enough. Exercising jurisdiction over these individuals for their purely extraterritorial acts must still be consistent with the Constitution, which requires that a defendant have sufficient "minimum contacts" to warrant suit here. *International Shoe*, 326 U.S. at 316; *See also In re Terrorist Attacks on September 11, 2001*, 718 F.Supp.2d 456 (S.D.N.Y. June 17, 2010). Where a foreign defendant lacks sufficient minimum contacts with a particular state, such as New York, contacts with the United States as a whole will suffice for purposes of Rule 4(k)(2)(B). F.R.C.P. 4(k)(2)(B); *see also* Ellencrig. *supra* at 381. But minimum contacts there must be. And the record contains not a scintilla of evidence tending to show that any of these four individuals has any contacts with the United States.

The four remaining defendants are all citizens and residents of Libya. Plaintiffs do not suggest that any of them has any contacts with the United States, or has ever been to the United States. Their purely extraterritorial actions are not alleged to have had any effects in the United States – where none of the Plaintiffs lives, or is alleged ever to have been. And the actions complained of all took place on foreign soil, and had no impact on anyone or anything in the United States.

Plaintiffs have thus not come close to establishing a *prima facie* case that any of these four defendants has sufficient contacts with the United States to permit the exercise of personal jurisdiction over them in a TVPA action, consistent with due process. Plaintiffs admitted as much in their motion to transfer, when they indicated to Judge Beetlestone that they did not think the Eastern District of Pennsylvania had personal jurisdiction over these four defendants. (Dkt. No. 30, ¶ 15). If there is no personal jurisdiction in Philadelphia, there is none in New York City. The same considerations apply.

I add that Judge Schofield's analysis of why New York's long arm statute, N.Y.C.P.L.R §§301, 302, does not give rise to statutory *in personam* jurisdiction over these defendants for their actions undertaken is spot on, and I adopt that aspect of her opinion as my own. While her analysis binds only the 68 plaintiffs in the original action and the 3 defendants there sued, it applies equally to the additional plaintiffs and defendant in this case.

The alleged actions or inactions of Ambassador Dabbashi (who was not a defendant in Judge Schofield's case) in New York do not alter that calculus. The essence of the claims against Ambassador Dabbashi is that he, while resident in New York, failed to stop the defendants from doing what Plaintiffs allege that they did back in Libya – not that he actually perpetrated any torture. Dabbashi is not alleged to have acted as the agent of the other four defendants in New

York – exactly the opposite, they are alleged to have more or less acted as his agents in Libya --

so there is no basis to conclude that anything he did or did not do confers personal jurisdiction

over any other defendant.

## IV.   The Motion for Leave to Take Jurisdictional Discovery Is Denied

All this being so, Plaintiffs ask that this Court allow them to take jurisdictional discovery,

in the hope that they can turn up some contact that one or more of these defendants has with the

United States. That request is denied.

The Second Circuit has repeatedly held that, "A district court has wide latitude to determine

the scope of discovery." *In re Agent Orange Prod. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008); *See*

*also Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992).

Therefore, a district court is "typically within its discretion to deny jurisdictional discovery when

'the plaintiff [has] not made out a prima facie case of jurisdiction.'" *Frontera Resources*

*Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 401 (2d Cir. 2009)

(quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007)).

Here, Plaintiffs have not made out a prima facie case that this court could exercise personal

jurisdiction over any of these defendants. Moreover, they have not explained how they could

possibly "take" jurisdictional discovery. This court has no power to compel any of the defendants

to respond to discovery requests or to sit for a deposition; obtaining answers would require the

service of formal Letters Rogatory (so-called "informal service" would not do), translated into

Arabic (the only language that this court can be sure the defendants speak and understand), from

this court to a court in Libya, which might or might not honor them.

Plaintiffs' assertion that, "Defendants should not be permitted to evade responsibility for

their tortious actions by simply ignoring this lawsuit," (P.J. Memo., Dkt. No. 45 at 13) may

resonate at a theoretical level, but as more than one commentator has noted, the TVPA and the Alien Tort Claims Act are "toothless and unenforceable, leaving victims without recourse or redress," when the defendants have no contacts with the United States. Stephan, *supra* at 1357; *See also* Laura Beck Knoll, *Personal Jurisdiction over Maritime Defendants: Daimler, Walden, and Rule 4(k)(2)*, 40 TUL. MAR. L.J. 103, 130 (2015); F.R.C.P. 4(k)(2). The lack of any evidence that these defendants have such contacts makes this case distinguishable from the cases against alleged Libyan warlord Khalifa Hifter, who does have contacts in the United States. Ford, *Is A Libyan Warlord Beyond the Law's Reach?*, LAWFARE, (Oct. 22, 2020).

Finally, I note that this is the second time these plaintiffs (or a significant number of them) have brought these very claims before this court, and that this is the second lawsuit filed asserting them. Plaintiffs do not appear to have made any effort to take jurisdictional discovery in the earlier lawsuit before Judge Schofield. They managed to locate information that they (mistakenly) thought would render Dabbashi amenable to suit in New York; they offer no such public information about any of the other defendants. It is clear that the request for jurisdictional discovery is simply a fishing expedition on Plaintiffs' part.

So the motion for leave to take jurisdictional discovery of the defendants other than Dabbashi is denied, and the complaint is dismissed sua sponte as against the four remaining defendants as well.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Complaint is DISMISSED.

The Clerk of Court is respectfully directed to close this case.


Dated: October 25, 2021

_____

United States District Judge

BY ECF TO ALL COUNSEL